IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| LANDAYA FLOYD, ADMINISTRATRIX | : | CIVIL ACTION |
| OF THE ESTATE OF ZYAIRE D. FLOYD, | : | |
| Plaintiff, | : | No. 25-cv-1802 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**I.     Introduction**

This case arises out of a high-speed chase by the Philadelphia Police of two allegedly stolen vehicles leading to the death of the passengers of one of those vehicles. Currently before the Court are Defendants' Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint, ECF No. 16 ("Defs. Mot."), and Plaintiff's response thereto, ECF No. 19 ("Pl. Br.").[1] Given the deferential pleading standard specifically enjoyed by Plaintiff at this early stage of the proceeding, Defendants' Motion to Dismiss as to both Counts I and II is denied.[2]

**II.    Background**

    **A.     Factual background**

The following recitation presents the facts as they are pleaded in Plaintiff's Amended Complaint, ECF No. 13 ("Am. Compl."), which are taken as true for the purposes of assessing Defendants' Motion to Dismiss.

---

[1] When applicable, the Court adopts the pagination supplied by the CM/ECF docketing system, which does not always match the document's internal pagination.
[2] The Court finds this Motion appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).

1

On July 10, 2023, Mr. Floyd was a passenger in a Hyundai being driven by Amir Brown. Am Compl. ¶¶ 9, 26. At that time, Defendants Elliot and Esack (the "Officer Defendants") were conducting a high-speed chase of Mr. Brown, based on their belief that Mr. Brown had stolen a silver Hyundai. *Id.* ¶¶ 10–11. While pursuing Mr. Brown in the allegedly stolen Hyundai, the Officer Defendants encountered a silver Kia, which they believed was also stolen. *Id.* ¶ 12. The Officer Defendants began a high-speed chase of both vehicles. *Id.* During the chase of both the Hyundai and the Kia, the Hyundai crashed, prompting Mr. Floyd to attempt to exit the vehicle. *Id.* ¶¶13–15. Meanwhile, the Officer Defendants continued chasing the Kia, causing the Kia to crash near the passenger side door of the Hyundai, killing Mr. Floyd. *Id.* ¶16. Mr. Floyd is Plaintiff's decedent. *Id.* ¶ 15.

Plaintiff avers that over the course of the July 10, 2023 incident, the Officer Defendants sped up to Mr. Brown and the other vehicle, *id.* ¶ 20, maintained a speed of 55 mph in a densely populated 25 mph zone, *id.* ¶¶ 21–23, did not activate their lights, sirens, or horn during the majority of the chase, *id.* ¶ 24, and were in violation of Philadelphia Police Department Directive 9.4: Vehicular Pursuits, *id.* ¶ 29.

Plaintiff also alleges that the City of Philadelphia failed to train and supervise the Officer Defendants regarding vehicular pursuits, *id.* ¶ 33, that the City of Philadelphia has historically failed to train and supervise its police officers, *id.* ¶ 34, and that on at least three occasions, plaintiffs have brought cases in this court regarding failure to train for and supervise high-speed chases, *id.* ¶36.

B.    **Procedural background**

On November 4, 2024, Plaintiff filed a Writ of Summons in the Court of Common Pleas of Philadelphia. On March 10, 2025, Plaintiff filed its Complaint, which Defendants subsequently

removed to this Court. ECF No. 1. Plaintiff did not object to the removal. On March 9, 2025, Defendants filed a Motion to Dismiss. ECF No. 7.

On June 6, 2025, Plaintiff filed an Amended Complaint. Am Compl. In Count I of the Amended Complaint, Plaintiff asserts a 42 U.S.C. § 1983 claim that the Officer Defendants' conduct during the chase violated Mr. Floyd's Fourteenth Amendment Due Process Clause rights. *Id.* ¶ 39. In Count II, Plaintiff asserts a § 1983 *Monell* claim that the City of Philadelphia, through its police department, failed to establish an adequate policy regarding high-speed vehicle pursuits and did not properly train its police force on when and how to conduct a high-speed vehicle pursuit, when it knew or should have known these failures would lead to violations of citizens' constitutional rights. *Id.* ¶¶ 47–48. The remaining counts allege violations of Pennsylvania state law. Count III alleges that the Officer Defendants are liable for negligence. Count IV alleges the City of Philadelphia is vicariously liable for the Officer Defendants' negligence under the theory of respondeat superior.

On June 20, 2025, Defendants filed a second Motion to Dismiss asserting under Federal Rule of Civil Procedure 12(b)(6) that Counts I and II of Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted. Defs. Mot.

**III.    Legal standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must sufficiently plead facts that, if accepted as true and interpreted in the light most favorable to the plaintiff, "state a claim to relief that is plausible on its face." *McTernan v. City of York*, 577 F. 3d 521, 526, 530 (3d. Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

3

at 678. A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Likewise, the tenet that a court must accept as true all the allegations in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Pleadings that offer only "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV.  Discussion

### A.  § 1983 state-created danger claim against the Officer Defendants

In Count I, Plaintiff brings a state-created danger claim against the Officer Defendants, claiming that the officers' "unlawful high-speed pursuit" put Plaintiff in substantial risk of harm such that Mr. Floyd's Fourteenth Amendment rights were violated. Am. Compl. ¶ 39. The Officer Defendants moved to dismiss this count on the grounds that proving such a claim requires a showing that the officers had an "intent to harm" and that Plaintiff has failed to plead facts showing that the Officer Defendants acted with that degree of culpability. Defs. Mot. 5–9. Plaintiff argues that she is only required to show that the Officer Defendants acted with a "conscious disregard of a great risk of serious harm" and that even if the "intent to harm" standard applies, that standard is met by the facts pleaded in the Amended Complaint. Pl. Br. 9–13. For the reasons set forth below, the Officer Defendants' Motion to Dismiss Count I is denied.

#### 1.  Governing law

The state-created danger doctrine relies on the Fourteenth Amendment's Due Process Clause and "embodies the principle that the government has an obligation . . . to protect individuals against dangers that the government itself creates." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 717 (3d Cir. 2018). Under this theory of liability, a plaintiff may sue under § 1983 to recover

from a state actor when "state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal citations and quotation marks omitted). A plaintiff must satisfy four elements to state a viable state-created danger claim under § 1983 and the Fourteenth Amendment:

> (1) [t]he harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sauers*, 905 F.3d at 717. The Third Circuit has reviewed actions under this doctrine where, as here, a bystander was injured during a police pursuit of a fleeing suspect. *See, e.g., id.*

Of relevance in the matter at bar, is the degree of culpability required for the second prong of the *Sauers* test to be satisfied. In *County of Sacramento v. Lewis*, the Supreme Court held that for an officer pursuing a fleeing suspect in a high-speed chase to shock the conscience, there must be an "intent to harm suspects physically or to worsen their legal plight." 523 U.S. 833, 854 (1998). There, the Supreme Court found no intent to harm at the summary judgment stage when a sheriff's deputy engaged in a high-speed chase, reaching 100 mph in a residential neighborhood, of a motorcycle that was involved in a traffic infraction. *Id.* at 836–42. The chase led to the death of a passenger on the motorcycle. *Id.* The Supreme Court explained that the officer's instinct was to "do his job as a law enforcement officer," not to "terrorize, cause harm, or kill" the decedent. *Id.*

at 854. Building on *Lewis*, the Third Circuit has emphasized that to be conscience-shocking, the intent to harm must be "unjustifiable by any government interest" and cannot be inferred merely because a chase eventuates in deliberate physical contact causing injury. *Davis v. Township of Hillside*, 190 F.3d 167, 171 (1999); *but see id.* at 174 (McKee, J. concurring) ("the validity and the strength of any such inference depends entirely upon the totality of circumstances surrounding the contact").

While establishing the intent to harm standard, the Supreme Court also held the door open for a lower standard to be applied where officers have "time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, 523 U.S. at 854. Applying *Lewis*, the Third Circuit has established three distinct levels of culpability that may be considered to shock the conscience depending "on how much time a police officer has to make a decision." *Sauers*, 905 F.3d at 717. As the time the officers have to deliberate decreases, the culpability standard heightens as follows:

> (1) "[A]ctions undertaken with unhurried judgments, with time for careful deliberation, will be held to shock the conscience if they are done with deliberate indifference;"
>
> (2) "actions taken within a time frame that allows an officer to engage in hurried deliberation" are sufficient to shock the conscience "[w]hen those actions reveal a conscious disregard of a great risk of serious harm;" and
>
> (3) "actions taken in a hyperpressurized environment . . . will not be held to shock the conscience unless the officer has an intent to cause harm."

*Id.* (internal citations and quotation marks omitted).

### 2. Application

Here, the Court need not determine the appropriate level of culpability because even under the higher bar of the "intent to harm" standard, the pleadings support an inference at the motion to dismiss stage that the Officer Defendants did intend to harm Mr. Floyd. Specifically, the following

allegations allow the Court to infer that the Officer Defendants acted with an intent to harm: (1) the Officer Defendants sped up to Mr. Brown and the other vehicle, Am. Compl. ¶ 20, (2) the Officer Defendants maintained a speed of 55 mph in a densely populated 25 mph zone, *id.* ¶¶ 21–23, (3) the Officer Defendants did not activate their lights, sirens, or horn during the majority of the chase, *id.* ¶ 24, and (4) the Officer Defendants were in violation of Philadelphia Police Department directives, *id.* ¶ 29. Additionally, drawing all inferences in favor of Plaintiff, it is questionable what interest the government had in initiating a high-speed chase in pursuit of the allegedly stolen vehicles and in switching which vehicle was being pursued mid-chase. While Plaintiff may have a heavy burden of proving its claim against the Officer Defendants, Plaintiff has stated a claim upon which relief can be granted under the *Twombly/Iqbal* standard.

B. § 1983 *Monell* claim against the City of Philadelphia

In Count II, Plaintiff asserts a § 1983 claim under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978) that the City of Philadelphia, through its police department, failed to establish an adequate policy regarding high-speed vehicle pursuits, Am. Compl. ¶ 47, and did not properly train its police force regarding high-speed vehicle pursuits, *id.* ¶ 48, when it knew or should have known these failures would lead to violations of citizens' constitutional rights. The City of Philadelphia moved to dismiss this count, arguing that Plaintiff's *Monell* claim is comprised of only conclusory and general averments, which are insufficient to state a claim for municipal liability. Defs. Mot. 10. For the reasons set forth below, the City of Philadelphia's Motion to Dismiss Count II is denied.

1. Governing law

There are two circumstances under which a plaintiff can establish municipal liability under § 1983: (1) where "the alleged constitutional transgression implements or executes

a policy . . . officially adopted by the governing body and (2) where said transgression implements or executes an informally adopted custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)); *see Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). Policy is established when "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Beck*, 89 F.3d at 971 (cleaned up). Custom is established when a course of conduct practiced by state officials, though not authorized by law, is "so permanent and well settled as to virtually constitute law." *Id.* (cleaned up). Custom can also be established "by evidence of knowledge and acquiescence." *Id.* It follows that a municipality's policy or custom of failing to train its employees and officers can lead to liability under *Monell*. *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Liability under a failure to train theory requires showing that the absence of training is indicative of "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Reitz*, 125 F.3d at 145. Generally, deficient training can rise to the level of deliberate indifference "only where the failure to train has caused a pattern of violations." *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir.2000). Whether asserting municipal liability due to a policy or a custom, a plaintiff must "specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658.

      In addition to proving that an unlawful policy or custom existed, "a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (citing *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990)). "A sufficiently close causal link between . . . a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom." *Id.* (quoting *Bielevicz,* 915

F.2d at 851). In the context of a failure to train claim, "[t]he focus . . . is on the adequacy of the training program in relation to the tasks the particular officers must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury." *Reitz*, 125 F.3d at 145. The plaintiff must show "that the training deficiency actually caused the injury." *Id.*

    2.    Application

        i.    **Failure to train**

Plaintiff has adequately pled a failure to train claim under the generous standard enjoyed by Plaintiff at the motion to dismiss stage. Plaintiff's Amended Complaint avers the following:

> (1) The City of Philadelphia, through its Police Department, maintains a policy for vehicular pursuits. Am. Compl. ¶¶ 29–31.
>
> (2) Nevertheless, the City of Philadelphia did not establish a policy to train its police force on when and how to conduct a high-speed vehicle pursuit. *Id.* ¶ 48.
>
> (3) Specifically, the City of Philadelphia failed to train and supervise Defendants Elliot and Esack regarding vehicular pursuits. *Id.* ¶ 33.
>
> (4) The conduct of the City of Philadelphia was a factual and/or proximate cause of the harm and damages sustained by Plaintiff's decedent, who died during the course of a vehicular pursuit. *Id.* ¶ 52.
>
> (5) The City of Philadelphia has a history of failing to train and supervise police officers regarding high-speed chases, failing to protect citizens like Plaintiff's decedent from high-speed chases that are known to be dangerous, failing to monitor officers during high-speed chases, and failing to ensure that security protocols are being followed. *Id.* ¶ 37.
>
> (6) The City of Philadelphia's historical failures to train and supervise its police officers is evident from the following data: between 2015 and 2019, there were 354 police vehicular, of which 208 (58.7%) were unjustified, according to data compiled by the City; between 2015 and 2020, vehicular pursuits resulted in injury or death to 36 civilians, 34 suspects, and 11 Philadelphia police officers. *Id.* ¶¶ 34–35.

9

Although several of these pleadings are close to being conclusory, given that Plaintiff is attempting to prove what did *not* occur as part of the City of Philadelphia's allegedly deficient training policies, it would be unduly harsh to dismiss the failure to train claim at this early stage. *See Martin-McFarlane v. City of Philadelphia*, 299 F. Supp. 3d 658, 669 (E.D. Pa. 2017) (allowing a failure to train claim to survive a motion to dismiss where Plaintiff cited a policy that evinced a need for training and asserted that no such training existed). Furthermore, it can be inferred from these pleadings that the City of Philadelphia has been deliberately indifferent to the consequences of its allegedly deficient training policies, that such alleged deficiencies led to the injury in this case, and that the alleged failure to train has led to a pattern of constitutional violations.

The City of Philadelphia's reliance upon the holding in *Wood v. Williams*, 568 F. App'x 100, 103–04 (3d Cir. 2014) is misplaced. *See* Defs. Mot. 10.[3] There, the Third Circuit affirmed the District Court's dismissal of a failure to train claim where the plaintiff's complaint failed to (1) identify a specific policy, (2) link any policy to the alleged constitutional violation, (3) identify the policymaking authority or (4) show prior notice through a pattern of similar constitutional violations. *Wood*, 568 F. App'x at 105. Here, as distilled above, Plaintiff's Complaint includes all four of these things, even if Plaintiff's evidence is not fleshed out at this early stage in the proceedings. Therefore, Defendant's Motion to Dismiss Count II is denied.

### ii. Inadequate municipal policy

It is unclear whether and how Plaintiff asserts an inadequate municipal policy claim that is distinct from its failure to train claim. Plaintiff cites the Philadelphia Police Department's policies

---

[3] The Court need not dwell on the City of Philadelphia's appeal to *Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005) since that case predates *Twombly*/*Iqbal*, does not involve a failure to train claim, and rested largely on the inability of the plaintiff there to show any connection between the Attorney General and the conduct leading to the alleged constitutional violation the plaintiff suffered.

10

regarding vehicular pursuits, Am. Compl. ¶¶ 30–31, and makes the conclusory assertion that the policy is inadequate, *id.* ¶ 47. However, Plaintiff does not appear to raise any issue with the policy as written besides the City of Philadelphia's failure to properly "train, investigate, supervise, and discipline its employees" with respect to the policy. *Id.* ¶ 49. Thus, at this stage of the litigation, the Court does not find it necessary to analyze separately whether Plaintiff's *Monell* claim survives a motion to dismiss under a distinct theory of inadequate municipal policy.

V.     **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is denied. While Plaintiff may ultimately face an uphill battle in establishing facts needed to prevail in this matter, this motion to dismiss stage—when the Court must assume all of Plaintiff's plausible, factual assertions to be true—is not the proper arena for the Court to question the credibility of Plaintiff's allegations. .

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ John Milton Younge*
**Judge John Milton Younge**